Kristen Monsell (CA Bar No. 304793)
Email: kmonsell@biologicaldiversity.org
Catherine Kilduff (CA Bar No. 256331)
Email: ckilduff@biologicaldiversity.org
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612
Phone: (510) 844-7137
Facsimile: (510) 844-7150

*Attorneys for Plaintiff*
*Center for Biological Diversity*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>CHARLTON H. BONHAM, in his official capacity as Director of the California Department of Fish and Wildlife; CRAIG SHUMAN, in his official capacity as Manager of the California Department of Fish and Wildlife Marine's Region,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1. Plaintiff Center for Biological Diversity brings this action under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, against Defendants Charlton H. Bonham, the Director of the California Department of Fish and Wildlife, and Craig Shuman, the Marine Region Manager of the California Department of Fish and Wildlife, in their official capacities ("Defendants") for causing the illegal "take" of threatened and endangered humpback whales,

endangered blue whales, and endangered Pacific leatherback sea turtles. Specifically, Plaintiff challenges Defendants' authorization of the California commercial Dungeness crab trap fishery, which is entangling imperiled humpback whales, blue whales and leatherback sea turtles in violation of Section 9 of the ESA. *Id.* § 1538(a)(1)(B).

2. California Dungeness crab gear has been entangling large whales for at least a decade, but the number of reported entanglements has intensified in recent years. In fact, 2014, 2015, and 2016 each had the highest number of reported entanglements off the West Coast ever recorded. In 2016 alone, the California commercial Dungeness crab fishery entangled at least 22 ESA-listed animals, including at least 19 humpback whales, two blue whales, and one leatherback sea turtle.

3. Entanglement in commercial fishing gear is one of the primary threats impeding the recovery of imperiled humpback whales, blue whales, and leatherback sea turtles.

4. When whales and sea turtles get tangled up in Dungeness crab gear, they can drown or die of starvation or infection. Humpback whales and blue whales have been known to drag heavy California Dungeness crab gear hundreds of miles, which saps them of strength, causes significant stress and interferes with breathing, feeding, and reproduction.

5. Each entanglement of a humpback whale, blue whale, or leatherback sea turtle in California commercial Dungeness crab gear constitutes a "take" under the ESA and is unlawful in the absence of incidental take permit from the National Marine Fisheries Service.

6. Defendants do not have an incidental take permit authorizing takes incidental to operation of the Dungeness crab fishery. Nevertheless, Defendants authorize, license and allow Dungeness crab fishermen to use traps, fishing line, buoys, and other gear in precisely the manner that is entangling ESA-listed whales and sea turtles.

7. Defendants' authorization, permitting, oversight, and management of the Dungeness crab fishery has caused, and will likely continue to cause, the unlawful death, injury, capture, harm, and harassment of threatened and endangered humpback whales, endangered blue whales, and endangered leatherback sea turtles.

8. Accordingly, Plaintiff seeks a declaration that, in the absence of an incidental take permit, Defendants' actions violate the ESA's prohibition on "take" of listed species. Plaintiff also seeks prospective injunctive relief to protect humpback whales, blue whales, and leatherback sea turtles from further unlawful take due to Defendants' illegal actions and omissions.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because this action arises under the laws of the United States, and under 16 U.S.C. § 1540(c) because this action arises under the ESA. An actual, justiciable controversy now exists between Plaintiff and Defendants, and the requested relief is proper under 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. § 2202 (injunctive relief), and 16 U.S.C. § 1540(g) (citizen suit provision of the ESA).

10. Plaintiff provided Defendants and the U.S. Secretary of Commerce with notice of Plaintiff's intent to sue over the violations of law alleged in this Complaint more than sixty (60) days ago. Defendants have not remedied these violations of law.

11. Venue is proper in this district pursuant to 16 U.S.C. § 1540(g)(3)(A) because the violations of the ESA are occurring in this district, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district, and pursuant to 28 U.S.C. § 1391(c) because at least one of Defendants resides in this district.

**INTRADISTRICT ASSIGNMENT**

12. Pursuant to Civil Local Rules 3-2(c)-(f), this action is properly assigned to the San Francisco, Oakland, San Jose, or Eureka Divisions of this Court because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in counties in these divisions.

**PARTIES**

13. Plaintiff the Center for Biological Diversity (the "Center") is a nonprofit corporation that advocates for the protection of threatened and endangered species and their habitats through science, policy, and environmental law. The Center's Oceans Program focuses specifically on conserving marine ecosystems, and seeks to ensure that imperiled species are

properly protected from destructive practices in our oceans. In pursuit of this mission, the Center has been actively involved in protecting whales and sea turtles from deadly and harmful entanglement in commercial fishing gear. The Center has more than 61,000 members, many of whom live in California. The Center brings this action on behalf of itself and its members.

14. Center members and staff live in and regularly visit California's ocean, bays, beaches, and other coastal areas to observe, photograph, study and otherwise enjoy humpback whales, blue whales, and leatherback sea turtles in the wild. For example, Center members frequently sail, kayak, and go on whale watching tours in the Gulf of the Farallones, Half Moon Bay, Monterey Bay, the Santa Barbara Channel, and off San Diego to look for and photograph these animals. Center members and staff derive recreational, spiritual, professional, scientific, educational, and aesthetic benefit from the presence of humpback whales, blue whales and leatherback sea turtles in waters off California. The Center's members and staff intend to continue to use and enjoy California waters and coastal areas frequently and on an ongoing basis in the future.

15. Entanglements of humpback whales, blue whales, and leatherback sea turtles in California commercial Dungeness crab gear kills and harms animals that Center members enjoy viewing. Defendants' failure to comply with the ESA makes it less likely that Center staff and members will be able to observe, study, and enjoy these animals. Additionally, Center members reasonably fear that they will see a humpback whale, blue whale, or leatherback sea turtle entangled in crab gear when recreating and visiting California's beaches and ocean waters.

16. The above-described aesthetic, recreational, scientific, educational, and other interests have been, are being and, unless the relief prayed herein is granted, will continue to be adversely affected and irreparably injured by Defendants' continued refusal to comply with their obligations under the ESA. The relief sought in this case will redress these injuries.

**Defendants**

17. Defendant Charlton H. Bonham is named in his official capacity as Director of the California Department of Fish and Wildlife ("Department"). The Department's mission is to

manage California's diverse fish, wildlife, and plant resources, and the habitats upon which they depend, for their ecological values and for their use and enjoyment by the public. California's fish and wildlife resources, including all plants and animals, are held in trust for the people of the State of California by and through the Department. As Director, Mr. Bonham is a properly named state official with responsibility for the actions challenged in this Complaint.

18. Defendant Craig Shuman is named in his official capacity as the Manager of the Marine Region of the Department. As the Marine Region Manager, Mr. Shuman is a properly named state official with responsibility for the actions challenged in this Complaint.

19. Defendants are "persons" under the ESA and subject to the ESA's requirements and prohibitions.

## STATUTORY BACKGROUND

### Endangered Species Act

20. The ESA is the "most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its primary purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved" and "to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

21. The ESA defines a "species" to include "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16).

22. Section 4 of the ESA requires the National Marine Fisheries Service, the federal agency that administers the ESA with respect to most marine species, to list species as "endangered" or "threatened" when they meet the statutory listing criteria. *Id.* § 1533. An "endangered" species is "in danger of extinction throughout all or a significant portion of its range," and a "threatened" species is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(6), (20).

23. Once a species is listed, the ESA provides a variety of procedural and substantive

protections to ensure not only the species' survival, but also its ultimate recovery. Section 9 of the ESA makes it "unlawful for any person" to "take any [endangered] species within the United States or the territorial sea of the United States." 16 U.S.C. § 1538(a)(1)(B). This prohibition on "take" also applies to certain threatened species, including the Mexico Distinct Population Segment of humpback whales. 50 C.F.R. § 223.213. It is also unlawful for "any person" to "cause to be committed" any offense described in Section 9, including take of endangered species, or a violation of regulations pertaining to threatened and endangered species. 16 U.S.C. § 1538(g).

24. The term "take" is defined broadly as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such conduct." *Id.* § 1532(19). "Harm" means "an act which actually kills or injures wildlife," including habitat modification or degradation that "injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3. "Harass" means "an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering." *Id.* "Take" includes both direct and indirect harm and it need not be purposeful.

25. The term "person" includes "any officer, employee, agent, department, or instrumentality . . . of any State, municipality, or political subdivision of a State." 16 U.S.C. § 1532(13).

26. Under the ESA, "a governmental third party pursuant to whose authority an actor directly exacts a taking . . . may be deemed to have violated the provisions of the ESA." *Strahan v. Coxe*, 127 F.3d 155, 163 (1st Cir. 1997).

27. Before any person or agency may engage in or authorize any activity likely to incidentally take a listed species, they must first obtain an incidental take permit under Section 10 of the ESA from the National Marine Fisheries Service for taking threatened and endangered species "incidental to, and not the purpose of, . . . an otherwise lawful activity." 16 U.S.C.

§ 1539(a)(1)(B). Activities authorized under such a permit may "not appreciably reduce the likelihood of the survival and recovery of [any endangered or threatened] species in the wild." *Id.* § 1539(a)(2)(B)(iv). The ESA further conditions the issuance of an incidental take permit on the applicant developing and committing to implement a habitat conservation plan that, among other things, minimizes and mitigates the impacts of any incidental take of endangered and threatened species to the maximum extent practicable. *Id.* § 1539(a)(2)(A)(ii), (B)(ii).

## FACTUAL BACKGROUND

28. The humpback whale (*Megaptera novaeangliae*), blue whale (*Balaenoptera musculus*), and leatherback sea turtle (*Dermochelys coriacea*) are each ESA-listed species that have been, and are being, taken by Defendants' authorization of the California commercial Dungeness crab fishery.

### Imperiled Humpback Whales

29. Humpback whales are known for their aerial displays, including jumping out of the water (also known as "breaching") and slapping the water's surface with their flippers, tails, and heads. Humpback whales were listed as endangered in 1970 under the Endangered Species Conservation Act—the precursor to the ESA—and as endangered under the ESA upon its enactment in 1973. 35 Fed. Reg. 18,319 (Dec. 2, 1970). Entanglement in fishing gear is the most frequently identified source of human-caused injury or mortality to the species.

30. Recently, the National Marine Fisheries Service reclassified the globally listed humpback whale species into 14 different distinct population segments ("DPS"). 81 Fed. Reg. 62,260 (Sept. 8, 2016). Two of those populations are found in waters off California: the Central America DPS and the Mexico DPS. *Id.* The National Marine Fisheries Service listed the Central America DPS as endangered and the Mexico DPS as threatened. *Id.* at 62,269; 50 C.F.R. § 17.11.

31. Humpback whales in the Central America DPS generally migrate from their winter breeding grounds off Central America to feed almost exclusively off California and Oregon in spring and summer.

32. The National Marine Fisheries Service determined the Central America DPS is endangered based, in part, on the continuing, ongoing threat of entanglement in fishing gear. Vessel strikes and entanglement in fishing gear are considered likely to moderately reduce the population size or growth rate of the Central America DPS. The Central America DPS is estimated to contain 411 individuals.

33. The Mexico DPS consists of whales that breed along the Pacific coast of mainland Mexico in winter, migrate through the Baja California Peninsula coast, and feed across a broad geographic range from California to the Aleutian Islands in the summer and spring, with concentrations in California and Oregon.

34. The National Marine Fisheries Service determined the Mexico DPS is threatened in light of the continuing threat of fishing gear entanglements. Fishing gear entanglements are considered likely to moderately reduce the population size or growth rate of the Mexico DPS.

35. Five biologically important feeding areas for humpback whales exist off California. These areas include waters from San Francisco Bay to Monterey Bay, Morro Bay, and parts of the Santa Barbara Channel. Humpback whales are generally present in these areas during the spring, summer and fall, but can be found off California in every month of the year.

**Imperiled Blue Whales**

36. The blue whale is the largest animal ever known to have lived on earth. Like humpback whales, blue whales were listed as endangered under the precursor to the ESA in 1970, and under the ESA in 1973. 35 Fed. Reg. 18,319 (Dec. 2, 1970); 50 C.F.R. § 17.11.

37. Reducing human-caused injury and mortality, including entanglement in fishing gear, is one of the primary recovery actions identified in the recovery plan for the blue whale. Unlike many other large whales, blue whales have not shown signs of recovery over the last 20 years.

38. Scientists believe blue whales typically spend the winter off Mexico and Central America and feed during the summer off the U.S. West Coast, though they can be found off California in every month of the year. During the summer and fall, blue whales typically use nine

biologically important feeding areas off the coast of California, including the Gulf of the Farallones, Monterey Bay, the Santa Barbara Channel, and waters off San Diego.

**Imperiled Leatherback Sea Turtles**

39. Leatherback sea turtles are the largest sea turtles on the planet. These turtles can weigh up to 2,000 pounds and be up to 6.5 feet long. Pacific leatherback sea turtles were listed as endangered in 1970 under the precursor to the ESA, and as endangered under the ESA in 1973. 35 Fed. Reg. 8,491 (June 2, 1970); 50 C.F.R. § 17.11. Pacific leatherbacks were designated as California's official state marine reptile in 2012.

40. The recovery plan for the Pacific leatherback sea turtle states the number one priority for recovering the species is to eliminate all entanglement in U.S. fisheries.

41. The Western Pacific leatherback sea turtle has declined more than 80% since the 1980s. The population is currently declining at a rate of 6% per year. The best available science predicts that the species may go extinct in less than 20 years if this trend continues. The National Marine Fisheries Service recently declared the leatherback sea turtle one of eight marine species most at risk of extinction in the near future.

42. Western Pacific leatherback sea turtles migrate across the Pacific Ocean, from nesting beaches in Indonesia and Papua New Guinea to waters off California, Oregon, and Washington where they feed on jellyfish. They are generally found off the U.S. West Coast in the summer and fall. Waters off Point Arena to waters off Point Arguello are designated as leatherback critical habitat because of the vital importance of these foraging grounds to the survival of the species.

**The California Commercial Dungeness Crab Fishery**

43. The California commercial Dungeness crab fishery is one of the most productive fisheries in the state. In 2016, the California commercial Dungeness crab fishery landed 26.67 million pounds of Dungeness crab—the highest landings of any commercial fishery in California after market squid. The value of these landings totaled $83.15 million—the highest value of any commercial fishery in the state.

44. Commercial Dungeness crab fishing is not allowed in California unless specifically authorized by the Department. Commercial Dungeness crab fishermen must obtain a commercial fishing license, a vessel permit, a trap permit, and a buoy tag from the Department. Commercial Dungeness crab fishing is not allowed if not in compliance with applicable laws and regulations.

45. Commercial Dungeness crab gear generally consists of traps (or "pots"), heavy-duty fishing line, and buoys. The gear is configured so that a single trap is fished per line with one or more buoys attached. Specifically, fishermen set heavily weighted traps on the bottom of the seafloor. Each trap is connected to a buoy floating at or near the surface by heavy-duty fishing line that runs through the water column. Fishermen often attach one or more buoys (a "trailer buoy") to the main line with additional line running at or near the surface. When the traps are full, the configured gear can weigh hundreds of pounds.

46. The California commercial Dungeness crab fishery occurs in two main management areas: northern California and central California. The Central California Management Area includes Santa Barbara, Avila-Morro Bay, Monterey, Half Moon Bay, and San Francisco-Bodega Bay. The Northern California Management Area extends from Fort Bragg to the California-Oregon border, and is divided from the Central Management Area at the Sonoma-Mendocino border.

47. In general, the Dungeness crab season runs from November 15 through June 30 in the Central Management Area and from December 1 through July 15 in the Northern Management Area.

48. Defendants permit the commercial Dungeness crab fishery to use up to 174,025 traps per season. The Department estimated that, during the 2014-2015 season, the total number of potential traps fished was 147,175 traps based on 451 active permits.

49. The relative level of fishing effort (measured by the number of traps being set as reflected by landings data) has been significantly higher throughout a large portion of the southern part of the Dungeness crab fishery since 2014. This period coincides with an increase in

the number of reports of entangled whales.

50. An increase in Dungeness crab fishing effort in humpback whale and blue whale biologically important areas when whales are present increases the risk of humpback whale and blue whale entanglements, respectively.

51. Central California, including Monterey Bay, is a known "hot spot" for humpback whale activity, especially from April-November. An increase in fishing effort in this area leads to increased risk of entanglements and likely an increase in the number of entanglements that occur.

**Defendants' Unlawful "Take" of ESA-Listed Whales and Sea Turtles**

52. ESA-listed humpback whales, blue whales, and Pacific leatherback sea turtles have been, and will continue to be, killed, injured, captured, and otherwise taken by the California commercial Dungeness crab fishery through entanglement in the gear used in the fishery.

53. Entanglements can occur when the animals encounter the lines that extend from a trap set on the ocean bottom to a buoy at the surface, or in the lines between the main buoy and a trailer buoy at or near the surface. Entanglements occur in gear set during the commercial Dungeness crab season that is actively fishing for crab. Entanglements also occur in crab gear that has been abandoned or lost by fishermen.

54. When large whales come into contact with commercial fishing gear it can capture, harm, injure, or kill them. If the animals thrash around to try and shed the gear, this can make an entanglement worse. The gear can wrap around the whales' flippers, mouths, and tails.

55. Entanglement in commercial fishing gear can result in immediate death from drowning. Entanglements can also cause starvation through impaired locomotion.

56. Entanglements can also cause wounds, which can also lead to the development of infections or disease. In addition, reproductive females seen dragging gear or with severe wounds from entanglements have significantly lower chances of giving birth.




57. When growing animals are entangled, the lines can cinch tighter over time. Such injury can result in major tissue and bone damage and systemic infection. Constricting lines have also amputated flippers and tails. In addition, entanglements cause a significant increase in the stress hormone levels in large whales, which can lead to the development of systematic infections or increased susceptibility to disease.

58. Pacific leatherback sea turtles' large flippers and active behavior make them vulnerable to entanglement in fishing gear. Once entangled, leatherbacks usually continue to try to swim, exhausting themselves until they drown.

59. If the sea turtles do not drown, an entanglement can result in a prolonged period of forced submergence that triggers severe metabolic acidosis, which often drains the turtle's strength so significantly that it is unable to recover. As a result, many leatherbacks do not survive entanglements even if they do not immediately drown.

60. According to the National Marine Fisheries Service, the California commercial Dungeness crab fishery has been entangling ESA-listed humpback whales for at least ten years. Reports of entanglements have increased in recent years.

61. In fact, 2014, 2015, and 2016 each had the highest number of reported entanglements off the West Coast since the National Marine Fisheries Service started keeping

records in 1982. California commercial Dungeness crab gear was responsible for the majority of known causes of the entanglements in 2014, 2015, and 2016.

62. Based on information and belief, entanglements of ESA-listed animals in California commercial Dungeness crab gear have occurred and are occurring in 2017, and are reasonably likely to continue once the commercial Dungeness crab season opens.

63. Not all entanglements of large whales or sea turtles are observed. Reported entanglements represent only a portion of actual entanglements.

64. In 2014, the National Marine Fisheries Service confirmed multiple entanglements of humpback whales in California commercial Dungeness crab gear. Each of these entanglements constitutes an unlawful "take" under the ESA.

65. In one instance, a severed tail was found with two separate sets of Dungeness crab gear attached. Another entanglement resulted in Dungeness crab gear being wrapped tightly and twisted around the humpback's tail three times and caused deep lacerations.

66. In 2015, the National Marine Fisheries Service confirmed six separate humpback whales entangled in California commercial Dungeness crab gear. Each of these entanglements constitutes an unlawful "take" under the ESA. The agency determined several of these entanglement events constituted "serious injuries," meaning an "injury that will likely result in mortality." 50 C.F.R. § 216.3.

67. In 2015, a dead leatherback sea turtle was found off San Francisco, California entangled in fishing gear, with the rope and buoys wrapped completely around its neck.

68. Also in 2015, in response to the number of large whales entangled in California Dungeness crab gear, Defendants convened a "California Dungeness Crab Fishing Gear Working Group" to discuss short and long-term strategies to reduce the risk of whale entanglements in crab gear.

69. The Working Group cannot substitute for the Congressionally-mandated process in the ESA required to authorize the incidental take of humpback whales, blue whales, or leatherback sea turtles. Moreover, since the convening of the Working Group, takes of ESA-

listed species in Dungeness crab gear have continued.

70. Most recently, 2016 was another record-breaking year for reported entanglements off California. In 2016, the National Marine Fisheries Service confirmed 22 separate ESA-listed animals entangled in California commercial Dungeness crab gear: 19 humpback whales, two blue whales, and one leatherback sea turtle. Each of these entanglements constitutes an unlawful "take" under the ESA.

71. Some of these entanglement events caused significant injuries. For example, line from the commercial Dungeness crab gear cut into the tissue of one humpback whale so deeply that the line was barely visible. In another instance, lines from commercial Dungeness crab gear wrapped around the body, fins, and mouth of a humpback whale two times. And one well-known female blue whale, called both "Cadillac" and "Delta" due to the shape of her tail, was reported entangled in California commercial Dungeness crab gear in Monterey Bay in July 2016. She was later seen near the Palos Verdes area in October 2016 still entangled.

72. Whales have been reported entangled up and down the coast of California. Central California, in particular Monterey Bay, had the highest number of reported whale entanglements in 2016. The leatherback sea turtle confirmed entangled in California Dungeness crab gear in 2016 was also reported entangled in Monterey Bay.

73. The recent increase in reported whale entanglements is correlated with the increase in annual Dungeness crab landings near Monterey Bay.

74. Defendants received information from aerial surveys that in one day in June 2016, there were an estimated 2,086 traps set in Monterey Bay, with the greatest concentration between the 80-90 meter depth contours.

75. Defendants' reduction of the number of permitted Dungeness crab traps would lower the likelihood of whale and sea turtle entanglements. For example, Defendants' restriction of the number or density of Dungeness crab traps in the Monterey Bay area would lower the likelihood of whale and sea turtle entanglement.

76. Defendants authorize, license, and allow Dungeness crab fishermen to use traps,

fishing line, buoys, and other gear in a manner that is likely to result in the entanglement of humpback whales, blue whales, and leatherback sea turtles.

77. Defendants are aware that humpback whales, blue whales, and a leatherback sea turtle have been entangled in gear used in the California commercial Dungeness crab trap fishery.

78. For example, since at least April 2015 the California Department of Fish and Wildlife has been discussing the increase in reported entanglements of ESA-listed whales in Dungeness crab gear with the National Marine Fisheries Service's Protected Resources Division.

79. And, in response to entanglements in Dungeness crab trap gear that included a legible buoy tag, Defendants contacted Dungeness crab trap permit holders to facilitate interviews about where, when and how the trap was set and to facilitate return of the gear to the fisherman.

80. The National Marine Fisheries Service has found that the Department has authority to conserve resident species of threatened or endangered wildlife, including, but not limited to humpback whales, blue whales, and leatherback sea turtles.

81. Defendants' acts and omissions in authorizing, permitting, managing, and overseeing the commercial Dungeness crab fishery have caused, and will continue to cause, unlawful take through entanglements of humpback whales, blue whales, and Pacific leatherback sea turtles.

82. Defendants lack an incidental take permit for the take of ESA-listed humpback whales, blue whales, or leatherback sea turtles in the California commercial Dungeness crab fishery. In the absence of a valid incidental take permit, each entanglement of a humpback whale, blue whale, or leatherback sea turtle constitutes an independent violation of Section 9 of the ESA.

## CLAIM FOR RELIEF

### Violation of Section 9 of the ESA

83. Plaintiff re-alleges and incorporates, as if fully set forth herein, each and every

allegation in the preceding paragraphs of this Complaint.

84. Defendants' authorization, permitting, licensing, overseeing, and management of the California commercial Dungeness crab fishery is killing, injuring, harming, capturing, and otherwise causing "take" of humpback whales, blue whales, and leatherback sea turtles, in violation of the ESA, 16 U.S.C. §§ 1538(a)(1)(B), 1538(a)(1)(G); 50 C.F.R. § 223.213.

**PRAYER FOR RELIEF**

For the reasons stated above, Plaintiff respectfully requests that this Court:

1. Declare that Defendants have violated and are violating the Endangered Species Act by taking listed species without an incidental take permit;

2. Order Defendants to apply for an incidental take permit from the National Marine Fisheries Service under the Endangered Species Act by a date certain;

3. Enjoin Defendants from continuing to authorize and permit activities that take ESA-listed species with commercial Dungeness crab gear without an incidental take permit from the National Marine Fisheries Service;

4. Award Plaintiff the costs of this litigation, including reasonable attorney's fees; and

5. Provide such other relief as may be just and proper.

Respectfully submitted this 3rd day of October,

/s/ Kristen Monsell

Kristen Monsell (CA Bar No. 304793)
Email: kmonsell@biologicaldiversity.org
Catherine Kilduff (CA Bar No. 256331)
Email: ckilduff@biologicaldiversity.org
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612
Phone: (510) 844-7137
Facsimile: (510) 844-7150

*Attorneys for Plaintiff Center for Biological Diversity*