GLEN H. SPAIN (CSB #88097)
PO Box 11170
Eugene, OR 97440-3370
(541)521-8655
Email: fish1ifr@aol.com

*General Counsel and Attorney for Intervenor-Defendants*
*Pacific Coast Federation of Fishermen's Associations*
*(PCFFA) and Institute for Fisheries Resources (IFR)*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiff, <br><br> v. <br><br> CHARLTON H. BONHAM, in his official capacity as Director of the California Department of Fish and Wildlife, <br><br> Defendant, <br><br> and <br><br> PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS and INSTITUTE FOR FISHERIES RESOURCES, <br><br> Intervenor-Defendants. | Case No. 3:17-cv-05685-MMC <br><br> PCFFA/IFR REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN REPLY IN OPPOSITION TO PLAINTIFFS SUPPORT FOR ITS MOTION FOR SUMMARY JUDGMENT <br><br> Hearing Date: February 22, 2019 <br> Time: 9:00 AM <br> Dept.: Courtroom 7, 19th Floor <br> Judge: Hon. Maxine M. Chesney <br> Trial Date: Not yet set <br> Action Filed: October 3, 2017 |

PCFFA/IFR REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND REPLY IN OPPOSITION
TO PLAINTIFFS SUPPORT FOR ITS MOTION FOR SUMMARY JUDGMENT
Case No. 3:17-cv-05685-MMC

-1-

TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................... 3

SUMMARY OF CASE PROCEEDINGS............................................................... 4

MEMORANDUM OF POINTS AND AUTHORITIES......................................... 4

ELEMENTS OF SUMMARY JUDGEMENT UNDER RULE 56........................ 4

    I.     A Multitude of Genuine Scientific Disputes Exist
          as to Material Facts..................................................................................... 5

    II.    Examples of Specific Material Facts at Issue and in Dispute........................ 7

SUMMARY OF PCFFA/IFR POSITIONS............................................................. 10

PCFFA/IFR REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND REPLY IN OPPOSITION
TO PLAINTIFFS SUPPORT FOR ITS MOTION FOR SUMMARY JUDGMENT
Case No. 3:17-cv-05685-MMC

-2-

# TABLE OF AUTHORITIES

**Cases**

*Dept. of Commerce v. U.S. House of Representatives*,
525 U.S. 316, 329, 119 S. Ct. 765, 142 L. Ed 2d 797 (1999) ............................................. 5

*Fontain v. Filson,* 336 U.S. 681, 683, 69 S. Ct. 754, 93 L. Ed. 971 (1949),
*rehearing denied* 337 U.S. 921, 69 S. Ct. 1153, 93 L. Ed. 1730 (1949) ............................ 5

*See also Lujan v. National Wildlife Federation,* 497 U.S. 871, 884, 110 S. Ct. 3177,
111 L. Ed. 2d 695 (1990) .................................................................................................. 5

*Indiana General Corp. v. Lockheed Aircraft Corp.,* (9th Cir.) 408 F. 2d 294 (1968) .......... 5

*Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S. Ct. 486,
7 L. Ed. 2d 458 (1962) ...................................................................................................... 5

*Strahan v. Coxe,* 127 F.3d 155 (1st Cir. 1997) .................................................................. 10

**Federal Rules of Civil Procedure**

Federal Rules of Civil Procedure Rule 56 ....................................................................... 4, 5

Fed. R. Civ. P. Rule 56(a) ................................................................................................... 4

PCFFA/IFR REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND REPLY IN OPPOSITION
TO PLAINTIFFS SUPPORT FOR ITS MOTION FOR SUMMARY JUDGMENT
Case No. 3:17-cv-05685-MMC

## SUMMARY OF CASE PROCEEDINGS

This document is PCFFA/IFR's Reply to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment, and to Plaintiff's Reply in Support of its Motion for Summary Judgement (Dkt. 56, filed 12/21/18) and the related Declaration of Kristen Monsell (Dkt. 56-1, filed 12/21/18).[1]

Intervenor-Defendants Pacific Coast Federation of Fishermen's Associations (PCFFA) and Institute for Fisheries Resources (IFR), ("PCFFA/IFR") have previously OPPOSED Plaintiff Center for Biological Diversity's ("CBD's") Motion for Summary Judgment (Dkt. 48, filed 10/22/18) and SUPPORTED Defendant's Opposition to Plaintiff's Motion for Summary Judgment and also SUPPORTED Defendant's Cross-Motion for Summary Judgment. This continues to be PCFFA/IFR's position.

## MEMORANDUM OF POINTS AND AUTHORITIES

Summary Judgment Motions are governed by Rules of Civil Procedure Rule 56, which states in most relevant part:

> Rule 56(a): "... The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law...."

Both criteria must be met for summary judgment to be proper.

It is also well established that where there remains a "genuine dispute at to any material

---

[1] PCFFA/IFR coordinated with Defendant's Counsel in preparing this brief in accordance with prior Court instructions, in the interests of the efficient conduct of these proceedings.

fact," then summary judgment is not the proper remedy, but the case should instead go to trial. The U.S. Supreme Court has long established that the extraordinary remedy of summary judgment may be given under Civil Procedure Rule 56 <u>only if there is no dispute as to any material fact</u>. *Fontain v. Filson,* 336 U.S. 681, 683, 69 S. Ct. 754, 93 L. Ed. 971 (1949), *rehearing denied* 337 U.S. 921, 69 S. Ct. 1153, 93 L. Ed. 1730 (1949). See also *Indiana General Corp. v. Lockheed Aircraft Corp.,* (9th Cir.) 408 F. 2d 294 (1968).

"To prevail on a Federal Rule of Civil Procedure 56 motion for summary judgment – as opposed to a motion to dismiss – however, mere allegations of injury are insufficient. Rather, a plaintiff must establish that there exists no genuine issue of material fact as to justiciability or the merits." *Dept. of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 329, 119 S. Ct. 765, 142 L. Ed 2d 797 (1999). See also *Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

Summary judgment shall be entered only when pleadings, depositions and other papers and documents filed in the case show <u>no genuine issue as to any material facts</u>. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962).

<u>A Multitude of Genuine Scientific Disputes Exist as to Material Facts</u>

As previously noted, in Defendant Charles H. Bonham's opposition papers (filed 11/21/18) to the Plaintiff's Motion for Summary Judgment, and in his Cross-Motion for Summary Judgment and Points and Authorities, the Defendant asserts in defense that there are indeed a number of "material facts" in genuine dispute in this case, including: (1) Plaintiff's mis-characterization of Defendant's scope of legal authority over California Dungeness crab

fisheries, a fact in dispute which also goes directly to basic jurisdictional legal issues, but which is nonetheless still a "material fact in dispute"; (2) various assertions of fact in Plaintiff's evidence, particularly those purporting to be accurate counts of past California Dungeness crab fishery gear entanglements, which on closer examination may be encounters completely unrelated to the California Dungeness crab fishery, and which are even described in the Exhibit report documents themselves as uncertain or unreliable numbers, and; (3) various factual evidentiary disputes about the credibility and relevance of what the Defendant characterizes as hearsay evidence that thus may also be inherently unreliable.

The Defendant in his opposition brief (see Defendant's 11/21/18 Opposition brief (Dkt. 49), Statement of Facts, Secs. II & III; Declaration of Myung J. Park (Dkt. 49-1)) also points out that the State of California already has an active program to avoid California Dungeness crab fishery entanglements. And it could also be reasonably concluded from several of Plaintiff's own Exhibits that the State of California's efforts to greatly reduce the kinds of entanglements the Plaintiff complains of have are not only active but already been largely successful. The number of such entanglements has also gone sharply down in the most recent years, according to case Declarations and even Plaintiff's own Exhibits. In short, there remains a material factual dispute over whether or not there is even an "entanglement emergency" that warrants speedy disposition of this case through summary judgment.

There is also an enormous amount of scientific uncertainty (which Plaintiff fails to reveal) about the <u>basic data</u> upon which the Plaintiff's case is founded. Interestingly, many of the Plaintiff's <u>own Exhibits</u> underscore these uncertainties (i.e., factual scientific disputes), including references to ongoing scientific uncertainties and debates concerning: (a) how many animals become entangled each year, including how many of those reports are repeat sightings of

PCFFA/IFR REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND REPLY IN OPPOSITION
TO PLAINTIFFS SUPPORT FOR ITS MOTION FOR SUMMARY JUDGMENT
Case No. 3:17-cv-05685-MMC

-6-

the same animals; (b) which species of animals become entangled and why; (c) the geographic locations and sources of entanglements, many of which could be due NOT to entanglements in the California Dungeness crab gear at all, but could be occurring (since whales can drag gear for hundreds of miles, across state and national lines and over long periods of time) in Mexico, Washington, Oregon or Canadian waters and/or from encounters within fisheries entirely unrelated to California Dungeness crab fisheries; (d) the migration routes of whales generally, which seem to vary considerably based on unknown variables and under different ocean conditions; (e) how best to assess the risks of future entanglement in the absence of much of the basic research and data necessary to accurately make such predictions.

Additionally, much of the whale entanglement data relied upon by the Plaintiff co-mingles or confuses entanglement data from California with entanglement data (likely even for some of the same whales) from Oregon and Washington, in ways that can easily be misleading or result in multiple-counting and thus over-estimates of harm.

**Examples of Specific Material Facts at Issue and in Dispute**

The Plaintiff makes a number of sweeping, conclusory statements regarding both the scope and source of impacts on ESA-listed marine species, but in fact many of those assertions are in considerable scientific debate. This is especially the case in trying to track <u>specific</u> entanglements causally back to <u>specific</u> California Dungeness crab fisheries or types of gear. In many cases it is simply not scientifically possible to do so. And without any way to clearly demonstrate causation, not only would liability be in question but so would any potential for effective remedies. These scientific disputes are thus clearly "material" to the Plaintiff's case.

Some of many such examples from Plaintiff's own Exhibits that highlight major

PCFFA/IFR REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND REPLY IN OPPOSITION
TO PLAINTIFFS SUPPORT FOR ITS MOTION FOR SUMMARY JUDGMENT
Case No. 3:17-cv-05685-MMC

-7-

scientific uncertainties on causation issues (and thus present genuine disputes as to material facts) include the following quotes and/or with our observations of data deficiencies (with citations to Docket No. and page within each Docket document):

**(1) EXHIBIT 1 (Dkt. 48-1)** – Debates and factual uncertainties about modeling and predicting spatial distribution of marine species:

**From the Abstract (pg. 8):** "Managing marine species effectively requires spatially and temporally explicit knowledge of their density and distribution. Habitat-based density models, a type of species distribution model (SDM) that uses habitat covariates to estimate species density and distribution patterns, are increasingly used for marine management and conservation because they provide a tool for assessing potential impacts (e.g., from fishery bycatch, ship strikes, anthropogenic sound) over a variety of spatial and temporal scales. *The abundance and distribution of many pelagic species exhibit substantial seasonal variability, highlighting the importance of predicting density specific to the season of interest. This is particularly true in dynamic regions like the California Current, where significant seasonal shifts in cetacean distribution have been documented at coarse scales. Finer scale (10 km) habitat-based density models were previously developed for many cetacean species occurring in this region, but most models were limited to summer/fall."* ... (emphasis added)

**(2) EXHIBIT 4 (Dkt 48-1)** – There is substantial debate over impacts of ship strikes in comparison to fisheries gear entanglements as leading mortality factors:

**From Executive Summary (pg. 36):** "Eastern North Pacific blue whales are listed as threatened, and ship strikes have been suggested as a key factor limiting their recovery."

**Pg. 37:** "Over the past century, human use of the ocean has expanded dramatically, resulting in increased exposure of top predators to anthropogenic activities (Maxwell et al. 2013; Redfern et al. 2013). Shipping lanes into two of the largest California ports, Los Angeles/Long Beach and San Francisco, directly overlap with important blue whale foraging hot spots, creating an area of high collision risk (Berman-Kowalewski et al. 2010; Maxwell et al. 2013; Redfern et al. 2013; Irvine et al. 2014). Estimated blue whale ship strike rates in the California Current average approximately 2 per year, although this is a conservative estimate given that many ship strikes go undetected (Berman-Kowalewski et al. 2010; Redfern et al. 2013)."

**(3) EXHIBIT 6 - (Dkt 48-1):**

**From the Executive Summary (pg. 78):** ..... "*Based upon the entanglement reports, it*

PCFFA/IFR REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND REPLY IN OPPOSITION
TO PLAINTIFFS SUPPORT FOR ITS MOTION FOR SUMMARY JUDGMENT
Case No. 3:17-cv-05685-MMC

-8-

*is often not possible to identify the source of the gear or fishery involved.* The majority of entanglements reported between 2000 and 2012 involved trap/pot gear (45%). *There are also many cases, 34% between 2000 and 2012, where gear is unidentifiable to a source or specific fishery.....*" (emphasis added)

**Pg. 135:** "Co-occurrence scores were calculated for gray whale monthly densities with all fixed gear fishery effort and also separately for each of the 11 fixed gear fisheries. An intersect analysis was also performed between potential fishing area and each gray whale migration path using ArcMap, to provide insight on the percentage of the potential commercial fishing grounds for given fisheries that overlap with the U.S. west coast gray whale migration corridor. *Uncertainty regarding the actual fishing area used, noted in Section 2.0, could affect this part of the analysis for some of the modeled fisheries.*" (emphasis added*)*

**(4) EXHIBIT 15 – (Dkt. 48-1) Pgs. 539-542:**

Includes cumulative 2018 data on whale entanglements from Mexico, CA, OR and WA but locations (even states) of the original entanglement occurrence and the fishery of entanglement was often unclear or underdetermined, especially given that multiple sightings are likely to have occurred and entangled whales may have dragged gear for hundreds of miles.

**(5) EXHIBIT 16 (Dkt 48-1):**

**Pg. 544:** "As of May 25, 2016, NOAA Fisheries is evaluating 35 reports of entangled whales in 2016. Of those 35 reports, 15 are individual, confirmed entanglements of a whale. *Seven of the 35 reports are re-sights of whales already included in the 15 confirmed reports. The remaining 13 reports are pending further analysis of the report or re-sight of the animal (sometimes NOAA Fisheries receives entanglement reports, but the reporting party does not stay with the animal, making it difficult for response teams to find the animal or otherwise confirm the report)...*" (emphasis added)

**(6) EXHIBIT 26 (Dkt 48-1 – pgs. 596-620):**

This Exhibit is dealing with entanglement data entirely from the State of Washington, but clearly demonstrates that marine animal entanglements occur in the State of Washington that clearly cannot be attributed to the California Dungeness crab fishery, but could be the source of some of the later entanglement sightings in California, given that loggerhead turtles too are highly migratory.

**(7) EXHIBIT 30 (Dkt 56-1, pgs. 8-15):**

PCFFA/IFR REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND REPLY IN OPPOSITION
TO PLAINTIFFS SUPPORT FOR ITS MOTION FOR SUMMARY JUDGMENT
Case No. 3:17-cv-05685-MMC

-9-

> This is a highly selective portion of a NMFS PowerPoint presentation that lumps data from CA, OR and WA together; many whale entanglements "reported in California" (pg. 8) apparently cannot be attributed to entanglement events that occurred in California; and the presention itself acknowledges multiple scientific "data gaps" (pg. 8). [Note: only pages 8 thorough 15 pages of this 37-page agency PowerPoint presentation were included in this Exhibit, hence these pages could easily be misinterpreted out of context]

We are of course not saying that such entanglements cannot occur in the California Dungeness fishery, nor are we saying that the risks of such future entanglements do not need to be rigorously, scientifically assessed and effectively minimized. That is precisely what this case is about. This is also what the State's "Working Group" is charged with doing. But we are saying that, since so many of the facts upon which Plaintiff's case is based are in serious scientific dispute, and these factual disputes *go to the very heart of both causation as well as liability*, that a Motion for Summary Judgment in this case is at this stage, at the very least, premature.

## **SUMMARY OF PCFFA/IFR POSITIONS**

PCFFA/IFR hereby affirm that they join, reassert and support Defendant Bonham's and the State of California's defense in opposition to this motion on the grounds that there are indeed multiple, on-going scientific debates that demonstrate "genuine disputes as to material facts" in this case, and that therefore summary judgment for the Plaintiff is not an appropriate remedy at this time. Given the ongoing and robust scientific debate on many fronts regarding these issues, we believe that the Defendant should not be summarily deprived of the opportunity to question the Plaintiff's science, data and assumptions at trial.

PCFFA/IFR also joins and supports Defendant's Cross-Motion for Summary Judgment as to the non-jurisdictional issues Defendant raises in his briefs. PCFFA/IFR, however, still take no position on the purely jurisdictional issues regarding the applicability of *Strahan v. Coxe,* and its

PCFFA/IFR REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND REPLY IN OPPOSITION
TO PLAINTIFFS SUPPORT FOR ITS MOTION FOR SUMMARY JUDGMENT
Case No. 3:17-cv-05685-MMC

-10-

related line of cases, nor any other purely jurisdictional issues raised in this case, at this time.

PCFFA/IFR continue to reserve their rights, however, to respond appropriately to Plaintiff's future pleadings in this case, as well as to fully participate in the later stages of this case.

DATED this 22nd day of January, 2019.

/s/ *Glen H. Spain*
GLEN H. SPAIN (CSB #88097)
PO Box 11170
Eugene, OR 97440-3370
(541)521-8655
Email: fish1ifr@aol.com

*General Counsel and Attorney for Intervenor-Defendants*
*Pacific Coast Federation of Fishermen's Associations (PCFFA)*
*and Institute for Fisheries Resources (IFR)*

//

//

//

//

//

//

//

//

//

//

PCFFA/IFR REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND REPLY IN OPPOSITION
TO PLAINTIFFS SUPPORT FOR ITS MOTION FOR SUMMARY JUDGMENT
Case No. 3:17-cv-05685-MMC

-11-

# **ATTESTATION**

I, GLEN H. SPAIN, am an ECF user whose identification and password are being used to file this PCFFA/IFR REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REPLY IN OPPOSITION TO PLAINTIFFS SUPPORT FOR ITS MOTION FOR SUMMARY JUDGMENT . In compliance with L.R. 5-1(i), I attest that I have signed and executed this document by my digital signature affixed thereto, as well as served it via ECF this date.

Dated:   January 22, 2019

*Glen H. Spain*
GLEN H. SPAIN

//
//
//
//
//

CBD-MSJ-PCFFAReplyOpposition(01-22-19)