| | |
|---|---|
| XAVIER BECERRA<br>Attorney General of California<br>MYUNG J. PARK<br>Supervising Deputy Attorney General<br>GARY ALEXANDER, SBN 167671<br>CONNIE SUNG, SBN 304242<br>SARA D. VAN LOH, SBN 264704<br>Deputy Attorneys General<br>  455 Golden Gate Avenue, Suite 11000<br>  San Francisco, CA 94102-7004<br>  Telephone: (415) 510-3743<br>  Fax: (415) 703-5843<br>  E-mail: Sara.VanLoh@doj.ca.gov<br>*Attorneys for Defendant Charlton H. Bonham*<br><br>GLEN H. SPAIN (CSB #88097)<br>PO Box 11170<br>Eugene, OR 97440-3370<br>(541)521-8655<br>Fax: (541) 689-2500 *[By arrangement]*<br>Email: fish1ifr@aol.com<br>*General Counsel and Attorney for Intervenor-Defendants Pacific Coast Federation of Fishermen's Associations (PCFFA) and Institute for Fisheries Resources (IFR)* | KRISTEN MONSELL (SBN 304793)<br>Email: kmonsell@biologicaldiversity.org<br>CATHERINE KILDUFF (SBN 256331)<br>Email: ckilduff@biologicaldiversity.org<br>Center for Biological Diversity<br>1212 Broadway, Suite 800<br>Oakland, CA 94612<br>Phone: (510) 844-7137<br>Facsimile: (510) 844-7150<br><br>DEAN S. KRISTY (SBN 157646)<br>Email: dkristy@fenwick.com<br>FENWICK & WEST LLP<br>555 California Street, 12th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 875-2300<br>Facsimile: (415) 281-1350<br>*Attorneys for Plaintiff Center for Biological Diversity* |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>                               Plaintiff,<br>v.<br><br>CHARLTON H. BONHAM, in his official capacity as Director of the California Department of Fish and Wildlife,<br><br>                               Defendant,<br>and<br><br>PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS and INSTITUTE FOR FISHERIES RESOURCES,<br><br>                               Intervenor-Defendants. | Case No. 3:17-cv-05685-MMC<br><br>**STIPULATION AND [PROPOSED] ORDER STAYING CASE**<br><br>Judge:      Hon. Maxine Chesney<br>Trial Date:   None scheduled<br>Action Filed: October 3, 2017 |

1

Pursuant to Northern District Local Rule 6-2, Plaintiff Center for Biological Diversity, Defendant Charlton H. Bonham, in his official capacity as Director for the California Department of Fish and Wildlife, and Intervenor-Defendants Pacific Coast Federation of Fisherman's Associations and the Institute for Fisheries Resources (collectively, the "Parties") submit this stipulation and proposed order staying the case.

**RECITALS**

1. Plaintiff filed a complaint on October 3, 2017, alleging that Defendant has caused and is causing the "illegal 'take' of threatened and endangered humpback whales, endangered blue whales, and endangered Pacific leatherback sea turtles." (Dkt. No. 1.) Plaintiff's complaint challenges Defendant's "authorization, permitting, licensing, overseeing, and management of the California commercial Dungeness crab fishery," which Plaintiff alleges "is killing, injuring, harming, capturing, and otherwise causing 'take' of humpback whales, blue whales, and leatherback sea turtles in violation of" Section 9 of the Endangered Species Act. *Id.*; 16 U.S.C. § 1538.

2. Defendant filed an answer to Plaintiff's complaint on November 17, 2017, admitting and denying certain of Plaintiff's allegations. (Dkt. No. 15.)

3. After successfully intervening, Intervenor-Defendants filed an answer to Plaintiff's complaint on April 16, 2018, incorporating Defendant's responses in its answer, and admitting and denying certain of Plaintiff's allegations. (Dkt. No. 41.)

4. The Parties filed cross-motions for summary judgment in this case and appeared for oral argument on the motions on February 22, 2019. After the matter was deemed submitted, Defendant requested that the Court hold off on a ruling pending further settlement discussions. The Court agreed and ordered a joint status report to be filed by the Parties by March 15, 2019. (Dkt. No. 66.) On March 15, 2019, the Parties requested an additional week for continuing negotiations, which the Court granted. (Dkt. Nos. 67, 68.)

5. The Parties are happy to report that they have reached an agreement on a series of interim measures that will be protective of the threatened and endangered species at issue in this

lawsuit, which will be effective until Defendant receives an incidental take permit from the federal government. A true and correct copy of these agreed-upon terms is attached as Exhibit A.

6. Because these interim measures are incomplete in some respects, requiring further scientific analysis, development of the process by which threat levels will be evaluated and responded to, and implementation of rulemaking to provide the necessary regulatory framework for the program, the Parties have agreed that the appropriate procedural mechanism for resolving this litigation while protecting the Parties' respective interests is to stay the case.

7. A case stay would allow any party to reopen the case if another party acts in contravention of the attached terms, thus providing sufficient reassurance to the Parties that a continuing avenue for more immediate relief exists.

**STIPULATION**

THEREFORE, IT IS HEREBY STIPULATED among the Parties, through their respective counsel and subject to this court's approval, as follows:

1. All further proceedings in this matter, including the submitted cross-motions for summary judgment, should be stayed until the issuance of the final rulemaking described in Exhibit A as the RAMP rule. The case should be administratively closed during that time, subject to reopening on motion by any party. Within 14 days after the publication of the final rulemaking, the Parties will file a status report with the Court.

2. The Parties are willing to provide additional status reports to the Court every six months, or at whatever frequency would satisfy the Court that matters are proceeding.

IT IS SO STIPULATED.

//
//
//
//
//
//
//

Dated: March 26, 2019

Respectfully submitted,

/s/ *Sara D. Van Loh*
Sara D. Van Loh
Deputy Attorney General
OFFICE OF THE ATTORNEY GENERAL

*Attorneys for Defendant Charlton H. Bonham*

/s/ *Kristen Monsell*
Catherine Kilduff
Kristen Monsell

*Attorneys for Plaintiff
Center for Biological Diversity*

/s/ *Glen Spain*
Glen Spain

*Attorney for Intervenors Pacific Coast Federation of Fishermen's Association and Institute for Fisheries Resources*

## ATTESTATION

I, Sara D. Van Loh, am the ECF user whose identification and password are being used to file this STIPULATION AND [PROPOSED] ORDER STAYING CASE. In compliance with L.R. 5-1(i), I attest that the other signatories have concurred in this filing.

DATED: March 26, 2019

/s/ *Sara D. Van Loh*

## [PROPOSED] ORDER

PURSUANT TO STIPULATION OF THE PARTIES, IT IS HEREBY ORDERED that:

1. All further proceedings in this matter, including the submitted cross-motions for summary judgment, are stayed until the issuance of the final rulemaking described in Exhibit A as the RAMP rule.

2. The court clerk is instructed to administratively close the case, subject to reopening on motion by any party.

3. Within 14 days after publication of the final rulemaking, the Parties will file a status

report with the Court.

4. The Parties will further submit a brief joint status update every six months from the date of this order until issuance of the RAMP rule.

DATED: _____

                                                    HON. MAXINE M. CHESNEY
                                                  United States District Judge

Exhibit A

*Center for Biological Diversity v. Bonham*
Case No. 3:17-cv-05685-MMC
U.S. District Court for the Northern District of California

# Exhibit A - Terms of Agreement

In the context of agreeing to support a stay of the case in advance of a ruling on the motion for summary judgment, the parties agree to the following measures:

I. **The parties agree to the following:**

   a. The 2019 season will close statewide on April 15.

   b. For the 2020 season and until submission of the draft HCP, the final state RAMP rule, or November 1, 2020, whichever is later, the season will close April 1 consistent with the approach described below.

   c. Until the ITP issues, the following additional commitments will apply:

      i. In consultation with the Working Group, the Director determines risk and management action on these dates: November 1, December 15, January 15, February 15, March 15, April 1, April 15, May 1, May 15, June 1, June 15, July 1.

      ii. Prior to those dates, the Working Group will provide any RAMP risk assessment and management recommendation to the Director and settlement parties.

      iii. The following also apply:

         1. One or more confirmed entangled ESA listed species in CA Dungeness gear or two or more ESA-listed species confirmed in unknown gear prompts a district-wide closure, or other management action that the Director demonstrates protects listed species based on best available science after consultation with the Working Group and settlement parties.

         2. Presence of 20 or more ESA-listed whales in a NOAA survey or a running average of 5 or more ESA-listed whales over a one-week period prompts a district-wide closure, or other management action that the Director demonstrates protects listed species based on best available science after consultation with the Working Group and settlement parties.

         3. The April, 2020 season will close April 1 for Districts 10, 17, and south. That closure can be lifted by the Director after consultation with the Working Group and the settlement

1

*Center for Biological Diversity v. Bonham*
Case No. 3:17-cv-05685-MMC
U.S. District Court for the Northern District of California

      parties, only if the risk is low as defined in the March 15, 2020 Working Group RAMP risk assessment and management recommendation and remains low for each successive reporting date during the 2020 season.

   4. Beginning April 1, 2021, and each season on April 1 thereafter until the ITP issues, Districts 10, 17, and south are only open to ropeless fishing gear by default. This spring closure can be lifted at the next scheduled Director's risk determination, after consultation with the Working Group, only if the risk is low on all RAMP criteria.

II. **The parties agree the provisions contained in Appendix A will be submitted to the Working Group, and the Department will advocate that the Working Group consider them for incorporation into the RAMP rule unless the Working Group demonstrates a different approach protects listed species based on the best available science.**

III. **The parties further agree:**

  a. The Department will:
    i. Submit a comprehensive draft HCP to NOAA consistent with Section 10 of the ESA, 16 USC § 1539, for commercial Dungeness crab by May 15, 2020.

      1. Involve the Center for Biological Diversity and PCFFA in the development process through quarterly consultations/check-ins.

    ii. Prohibit crab gear spatially and temporally or take other measures as recommended by NOAA until ITP is issued.

    iii. Complete the following rulemakings:

      1. Gear retrieval, to be effective by November 15, 2019.
      2. RAMP rulemaking – this shall incorporate the elements discussed below – to be effective by November 1, 2020.
      3. Marking for fixed gear fisheries, to be effective by November 15, 2019.

    iv. Pursue funding for an appropriate stipend for representatives to the Working Group.

*Center for Biological Diversity v. Bonham*
Case No. 3:17-cv-05685-MMC
U.S. District Court for the Northern District of California

      v. Support the Working Group efforts to increase public access to meetings and Working Group members' participation via remote access.

     vi. Commit to a regular frequency of RAMP workshops (i.e. webinar or public presentations) to provide accountability and public engagement regarding model design, model iteration, and other steps to increase trust and transparency in the RAMP and Working Group processes.

     vii. Submit the criteria in Appendix A to the Working Group and advocate that the Working Group consider them for incorporation into RAMP rule unless Working Group demonstrates a different approach protects listed species based on the best available science.

b. <u>Sea Turtle Evaluation Process</u> - The Department will:
     i. Request and advocate for six months' funding (about $130,000) from OPC during 2020 or before for NOAA to adapt the EcoCast model to the Dungeness crab fishery and incorporate recent years' data into the model, and
     ii. Pursue funding in collaboration with NOAA scientists for Endangered Species Act Section 6 funding, 16 USC § 1535, to monitor sea turtle presence off central and northern California.

c. <u>Whale presence modelling</u> – the Department will continue to support development of humpback and blue whale distribution models that consider forage information, including automation of the model to apply to the ocean conditions risk factor.
     i. The Forney/Santora model, with results of hindcasting testing will be presented to the Working Group in March/April 2019.
     ii. The WhaleWatch model that predicts habitat suitability for blue whales will be refined to enable real-time predictions at the scale of 10 km.
     iii. The Department will work with OPC to finalize contracting for development of automated humpback and blue whale distribution models before November 1, 2020.
     iv. If NOAA completes internal review of the models outlined in (a) – (c) above and indicates they are ready for use in fisheries management, they can be used to inform the ocean conditions risk factor.

*Center for Biological Diversity v. Bonham*
Case No. 3:17-cv-05685-MMC
U.S. District Court for the Northern District of California

    d. <u>Monitoring/Solar Loggers</u> –
        i. PCFFA commits to supporting this process by recruiting volunteers to fill the 40 available OPC funding spots for the 2019-2020 season. PCFFA will work to ensure volunteers provide a range of fishermen representing different tiers, levels of fishing effort, and fishing location.
        ii. If the 40 available OPC funding spots are not filled by volunteers during the 2019-2020 season, the parties agree to reconvene in June 2020 to discuss appropriate steps to further development of electronic monitoring.
        iii. As other applicable monitoring practices are developed (for example, self-reporting or aerial surveys), information can be incorporated as appropriate.

    e. <u>Ropeless Gear</u> – the Department will continue to support development of ropeless gear technology, or any other alternative gear, and explicitly allow for its testing and use in the RAMP regulation.
        i. Authorized use of ropeless gear will include annual reporting requirements on the outcomes of use, and recommendations for further development.
        ii. The Department will amend existing regulations or finalize new regulations by November 1, 2020, that allow alternate gear, including ropeless gear, that meets the enforcement criteria to be used in any area closed to commercial Dungeness crab fishing to protect whales or sea turtles.

    f. The parties will support this settlement publicly and coordinate any joint or separate press releases announcing the settlement to ensure they are consistent and appropriate in characterizations of this settlement and each party's intent.

    g. The parties will file a stipulation and proposed order to stay the case pending issuance of the final RAMP rule.

4

*Center for Biological Diversity v. Bonham*
Case No. 3:17-cv-05685-MMC
U.S. District Court for the Northern District of California

**Appendix A**

The following provisions will be submitted to the Working Group, and the Department will advocate that the Working Group consider them for incorporation into the RAMP rule unless the Working Group demonstrates a different approach protects listed species based on the best available science.

The following risk factors will be used to evaluate entanglement risk, and the need for a responsive management action.

1. Predictive or projection factors, which in combination with a second factor would trigger action
   a. Fleet Dynamics, meaning behavior or potential behavior of the fleet due to changes in the fishery. Until satisfactory data is otherwise available (for example solar loggers or other electronic monitoring of the fleet), **Trigger for elevated risk shall be** (1) the first two weeks of any season opener; (2) any season that opens after Feb. 1.
   b. Ocean Conditions, meaning prediction or other indication of ocean or forage conditions for whales, including but not limited to low krill abundance and high nearshore anchovy abundance. Until models currently under development are finalized in consultation with the Center for Biological Diversity, **Trigger for elevated risk is poor forage**. To assess forage conditions, the Director will consider stock assessments for various forage species (particularly anchovy and sardine), research cruises (e.g. the NOAA Rockfish Recruitment and Ecosystem Assessment midwater trawl surveys, acoustic trawl surveys for Coastal Pelagic Species), and oceanographic indicators (e.g. ENSO conditions and trends). The Director will also consider the prior analyses Dr. Jarrod Santora, Associate Researcher in the Department of Applied Mathematics, University of California at Santa Cruz, has completed (for calendar years 2013 – 2016) and compare current observations to those from prior years to make informed predictions about forage conditions. Data streams described above will be evaluated in light of the following correlations:
      i. Forage is considered poor and triggers elevated risk when at least two of the following are true:
         A. Upwelling is or is predicted to be below average. Specifically, upwelling is assumed to be below average when, according to data developed by NOAA offices which monitor El Niño events such as NOAA's Climate Prediction Center and the West Coast Office of NOAA's Coast Watch program, an El Niño is forecasted or occurring or sea surface temperatures are above average off California in the month prior to the evaluation.
         B. There is a low krill and high anchovy abundance according to NOAA stock assessments and surveys. In the absence of recent available data, this is considered true.

1

*Center for Biological Diversity v. Bonham*
Case No. 3:17-cv-05685-MMC
U.S. District Court for the Northern District of California

      c. Regardless of abundance, whales are concentrated near shore based on NOAA aerial or shipboard observations. In the absence of recent available data, this is considered true.

2. <u>Factors reflecting current, real-time conditions that would individually trigger action</u>
   a. <u>Presence of species of concern.</u> ***Trigger for elevated risk*** shall be 20 or more whales detected on any one NOAA survey in California waters, or a running average of 5 or more whales over a one-week period.
      i. Once elevated risk is triggered, elevated risk shall last as follows:
         1. If based on fall aerial survey data, risk shall be elevated through December 15;
         2. If based on spring rock-fish data, risk shall be elevated through the remainder of the season.
      ii. NOAA survey shall mean the fall whale aerial survey and the spring rockfish survey. Other data streams, such as whale watch data, may also be considered in addition to the NOAA surveys.
      iii. If NOAA surveys for the current year are not available, historical data detailing whale presence shall be used.
      iv. Seasonal whale distribution information since 2012 will be used as an indicator for humpback whales' seasonal migration and anticipated arrival to California feeding grounds. The 7-day composite running average of NOAA survey whale sightings in the southern Monterey Bay will be used as indicator of whale concentrations. Reports from breeding grounds in Mexico and Central America will be used as an indicator of whale migration to predict when whales are expected to start arriving in greater numbers offshore California.

   b. <u>Number of confirmed ESA-listed entanglements.</u> ***Trigger for elevated risk*** shall be 1 or more entanglements of ESA-listed species in the current fishing season, calculated as follows
      i. A confirmed entanglement attributable to the CA commercial Dungeness crab fishery shall count as 1 entanglement.
      ii. A confirmed entanglement of a whale in an unknown gear type or a whale of unknown species shall count as 0.5 entanglement.
         1. The Department shall determine an entanglement is confirmed based on the following factors, consistent with NOAA classification:
            - Confirmed photo or video of the gear on the whale
            - Department or NOAA staff has direct visual observation
            - Report came from a trusted source (trained or professional observer)

*Center for Biological Diversity v. Bonham*
Case No. 3:17-cv-05685-MMC
U.S. District Court for the Northern District of California

- An experienced response entanglement network member or a NMFS expert interviewed the reporting party. The information provided is detailed and specific enough to confirm entanglement
- Corroborated, independent, and multiple sources providing reports with detailed descriptions of the animal and the entanglement.

iii. A reported or unconfirmed entanglement will be investigated by the Department within 48 hours to determine if the criteria that would classify that entanglement as confirmed apply.

3. <u>Leatherback Sea Turtles</u> – Trigger for elevated risk shall be NOAA tagging data that indicates a leatherback sea turtle is present in a fishing district or one or more-ESA listed turtles are confirmed entangled in CA commercial Dungeness crab gear or two or more confirmed in unknown crab gear.

4. The RAMP rule should include that in response to an elevated risk, the Director shall take appropriate management action. The Director shall also use this approach during an interim period until an ITP is issued.
    a. Management action will be commensurate with the risk of entanglement.
    b. Management action will be based on the best available science.
    c. Management actions will be forward-looking and spatially explicit, but still allow for response to real-time data.
    d. Management action will be consistent with Fish & Game Code 8276.1(c)(3).

5. A rubric adopted in the RAMP rule should outline a scoring system for each risk factor, and associated categories of management actions depending on overall risk score.
    a. The rubric will allow for Working Group input on practical implementation of the management action.
    b. Categories of management actions will include at least one the below:
        i. Modification of fishing seasons and allowable fishing areas;
        ii. Specifying total or per-vessel numbers of traps allowed in any given fishing area;
        iii. Requiring use of specialized gear designed to reduce risk of entanglement in specified areas or periods, for example no fishing unless with ropeless gear, or;
        iv. No action.
    c. Additional data collection and reporting may also be requirements, including but not limited to the use of solar loggers or other monitoring requirements.

*Center for Biological Diversity v. Bonham*
Case No. 3:17-cv-05685-MMC
U.S. District Court for the Northern District of California

Once risk factors no longer indicate to the Director an elevated entanglement risk, or if the Director determines that the management actions are not appropriate or protective of marine life, the Director, with consultation with the Working Group, shall remove any management restriction.

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | *Center for Biological Diversity v. Charlton H. Bonham* | Case No. | **3:17-cv-05685-MMC** |

I hereby certify that on <u>March 26, 2019</u>, I electronically filed the following document with the Clerk of the Court by using the CM/ECF system:

### STIPULATION AND [PROPOSED] ORDER STAYING CASE

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>March 26, 2019</u>, at San Francisco, California.

| | |
|---|---|
| FE M. DOMINGO | /s/ Fe M. Domingo |
| Declarant | Signature |

SF2017203894
21398053.doc.