| | |
|---|---|
| Rob Bonta<br>Attorney General of California<br>Myung J. Park<br>Supervising Deputy Attorney General<br>Michael S. Dorsi (SBN 281865)<br>Deputy Attorneys General<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102-7004<br>Telephone: (415) 510-3366<br>E-mail: Michael.Dorsi@doj.ca.gov<br>*Attorneys for Defendant Charlton H. Bonham*<br><br>Glen H. Spain (CSB #88097)<br>PO Box 11170<br>Eugene, OR 97440-3370<br>Telephone: (541) 689-2000<br>Email: fish1ifr@aol.com<br><br>Robert M. Smith<br>J. Timothy Hobbs<br>K&L Gates LLP<br>925 Fourth Avenue, Suite 2900<br>Seattle, WA 98104<br>Telephone: (206) 625-7580<br>Email: robert.smith@klgates.com<br>Email: tim.hobbs@klgates.com<br>*Attorneys for Intervenor-Defendants Pacific Coast Federation of Fishermen's Associations (PCFFA) and Institute for Fisheries Resources (IFR)* | Kristen Monsell (SBN 304793)<br>Email: kmonsell@biologicaldiversity.org<br>Catherine Kilduff (SBN 256331)<br>Email: ckilduff@biologicaldiversity.org<br>Center for Biological Diversity<br>2100 Franklin St., Suite 375<br>Oakland, CA 94612<br>Phone: (510) 844-7137<br>Facsimile: (510) 844-7150<br><br>Dean S. Kristy (SBN 157646)<br>Email: dkristy@fenwick.com<br>Fenwick & West LLP<br>555 California Street, 12th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 875-2300<br>Facsimile: (415) 281-1350<br>*Attorneys for Plaintiff<br>Center for Biological Diversity* |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Center for Biological Diversity,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>Charlton H. Bonham, in his official capacity as Director of the California Department of Fish and Wildlife,<br><br>　　　　　　　　　　　　Defendant,<br><br>and<br><br>Pacific Coast Federation of Fishermen's Association and Institute for Fisheries Resources,<br><br>　　　　　　　　　　　Intervenor-Defendants. | Case No. 3:17-cv-05685-MMC<br><br>**FOURTEENTH<br>POST-STAY JOINT STATUS REPORT**<br><br>Judge:　　　　Hon. Maxine Chesney<br>Trial Date:　　None scheduled<br>Action Filed:　October 3, 2017 |

Plaintiff Center for Biological Diversity (Plaintiff or Center), Defendant Charlton H. Bonham, in his official capacity as Director for the California Department of Fish and Wildlife (Defendant or Director), and Intervenor-Defendants Pacific Coast Federation of Fishermen's Associations (PCFFA) and the Institute for Fisheries Resources (IFR) (collectively, the "Parties") respectfully submit this *fourteenth* post-stay joint status report pursuant to the Court's November 16, 2019 Order (Dkt. No. 72).

## BACKGROUND

Plaintiff filed a complaint on October 3, 2017, alleging that Defendant has caused and is causing the "illegal 'take' of threatened and endangered humpback whales, endangered blue whales, and endangered Pacific leatherback sea turtles." (Dkt. No. 1.) Plaintiff's complaint challenged Defendant's "authorization, permitting, licensing, overseeing, and management of the California commercial Dungeness crab fishery," which Plaintiff alleged "is killing, injuring, harming, capturing, and otherwise causing 'take' of humpback whales, blue whales, and leatherback sea turtles in violation of" Section 9 of the Endangered Species Act. Id.; 16 U.S.C. § 1538.

Defendant filed an answer to Plaintiff's complaint on November 17, 2017, admitting and denying certain of Plaintiff's allegations. (Dkt. No. 15.) After successfully intervening, Intervenor-Defendants filed an answer to Plaintiff's complaint on April 16, 2018, incorporating Defendant's responses in its answer, and admitting and denying certain of Plaintiff's allegations. (Dkt. No. 41.)

The Parties filed cross-motions for summary judgment in this case and appeared for oral argument on the motions on February 22, 2019. After the matter was deemed submitted, Defendant requested that the Court hold off on a ruling pending further settlement discussions. Those further settlement discussions were fruitful. The Parties submitted a Stipulation and Order Staying the Case, which this Court signed on March 26, 2019. (Dkt. No. 72.)

The parties later stipulated to extend the original stay, and that original stay was extended

through this Court's Order of November 16, 2020. (Dkt. 80.) The November 16, 2020 Order Staying the Case required the Parties to submit a joint status report every six months as the Parties work through their settlement commitments.

**CURRENT STATUS**

Since the stay was implemented, the California Department of Fish and Wildlife (CDFW) continued substantial progress toward its settlement obligations and has outlined those steps in the previous post-stay joint status reports.

The update presented below covers activities undertaken or reported by CDFW since the last update (Dkt. 89).

I.  **RISK ASSESSMENT STEPS**

CDFW performed entanglement risk assessments on the following days:

- May 19, 2025
- June 13, 2025
- October 24, 2025

These risk assessments were supported by CDFW aerial surveys undertaken on the following days:

- May 8, 2025
- October 14, 2025

For each risk assessment, CDFW compiled and distributed data, when available, and gathered from USCG, NOAA, CDFW landings, whale watch cruises, fishing fleet vessel surveys, independent researchers, NMFS scientific surveys, and fishery and whale experts. Each risk assessment was conducted in coordination with the Working Group. Meetings were implemented through fully remote access. Also, all materials and outcomes from the Working Group risk assessment meetings are available on the Department's Whale Safe Fisheries website and noticed through the Whale Safe Fisheries listserv.

II.  **Management Action**

CDFW took management action to reduce entanglement risk through the following measures:

- CDFW continued a 25% Gear Reduction and 30-Fathom Depth Constraint in Fishing Zones 1 and 2 (Fishing Zones 3-6 remained closed) on May 19, 2025.
- CDFW closed the commercial crab season in all Zones for the remainder of the 2024-25 fishing season, and a Trap Prohibition remained in place for Fishing Zones 3-4 in the recreational fishery, on June 13, 2025.
- CDFW delayed the opening of the commercial Dungeness crab fishery in all Fishing Zones, and prohibited the use of crab traps in the recreational fishery in Fishing Zones 1, 3, and 4 on October 25, 2025.

CDFW initiated a rulemaking to permanently expand retrieval of lost gear via public notice on September 27, 2024. The changes included enhanced reporting requirements to further improve accounting and removal of lost traps. These new requirements became permanent and effective on April 14, 2025.

IV. **REGULATORY AMENDMENTS TO RISK ASSESSMENT AND MITIGATION PROGRAM**

On April 5, 2024, CDFW provided public notice for proposed amendments to the RAMP regulations. A public hearing was held virtually on Tuesday, May 21, 2024. Due to the large volume of public comments and substantive input from stakeholders, CDFW undertook a reevaluation of several aspects of the proposed rulemaking, provided an additional 45-day public comment period beginning December 6, 2024, as well as another public hearing on January 21, 2025. CDFW submitted a revised version of the RAMP amendments to the Office of Administrative Law on April 4, 2025; the amendments were adopted and became effective on October 21, 2025.

The RAMP amendments modify regulations that originally went into effect on November 1, 2020, based on five seasons' worth of implementation experience, as well as feedback from the Working Group and other stakeholders. The RAMP amendments provide new specifications for

Dungeness crab fishing gear identification, simplify management areas, adjust definitions of Confirmed Entanglements and calculations to reflect improved gear identification, adjust Management Action timing with additional automatic delays/closures, clarify reporting requirements for electronic monitoring, and specify limitations and conditions in authorizing Alternative Gear. Additionally, the RAMP amendments provide CDFW necessary regulatory authority to implement potential future measures outlined in the draft federal Incidental Take Permit application and associated Conservation Plan.

## V.    UPDATES TO OTHER STEPS UNDERTAKEN

### A.    Conservation Plan

As noted in earlier reports, CDFW submitted its first draft Conservation Plan to the National Marine Fisheries Service (NMFS) on May 15, 2020. CDFW continued work on the draft Conservation Plan during this reporting period based on a broad array of public comments and comments from NMFS. CDFW submitted a revised draft Conservation Plan in January 2024 for additional review and comments from NMFS. CDFW spent considerable time reviewing and addressing those comments during most of 2024. CDFW subsequently submitted a final draft ITP application to NMFS on December 21, 2024 and received extensive comments and updated guidance in June 2025. Staff have spent the past several months addressing comments and coordinating with NMFS on submission of the new final draft application. It is expected that the latest draft will be resubmitted by the end of the calendar year.

### B.    Coordination with Working Group

All CDFW risk assessments, as noted above, were conducted in coordination with the Working Group. CDFW continued to support Working Group meetings, facilitating fully remote meetings and hosting an annual meeting of the Working Group. The materials and outcomes from the Working Group risk assessment meetings are available on CDFW's Whale Safe Fisheries website (https://wildlife.ca.gov/Conservation/Marine/Whale-Safe-Fisheries) and noticed through the Whale Safe Fisheries listserv.

### C.    Alternative Gear

CDFW staff continues to participate in regular discussions with the National Marine Sanctuary Foundation and interested stakeholders to discuss ongoing projects to test Alternative Gear types. CDFW remains committed to aiding in recruiting commercial Dungeness crab fishers for gear testing programs.

CDFW is currently reviewing two applications for the conditional use of Alternative Gear. Both applicants are requesting authorization to use ropeless fishing gear bolstered through previous testing in the Experimental Fishing Permit Program (EFP). It is anticipated that one or more systems will be authorized by the spring of 2026.

CDFW also continues to expand and facilitate testing and development of Alternative Gear through the EFP program. Since fully implementing the EFP program in April 2022 the California Fish and Game Commission has approved CDFW's issuance of four EFPs which include testing of one or more pop-up devices. Of the three pop-up EFPs issued thus far, nine pop-up devices from seven different manufacturers have been approved for testing. As of April 2025, four EFPs have been amended to allow a total of 120 fishers to participate, further expanding the state's efforts to test innovative gear types that do not require the use of a persistent vertical line.

**D.     Take Reduction Team**

In April of 2024, CDFW was informed by NMFS that the California commercial Dungeness crab pot fishery would be included in a Take Reduction Team to develop a Take Reduction Plan for Central American and Mainland Mexico humpback whales, and North Pacific blue whales. As required by the Marine Mammal Protection Act (MMPA), the Take Reduction Plan will reduce incidental mortality and serious injury to humpback whales via take reduction measures, including regulatory and/or voluntary measures for bycatch reduction. CDFW has also been notified, however, that the inclusion of Dungeness crab will not occur until after the Take Reduction Team convenes and additional analysis is completed by NMFS. At this time, no specific timeline has been provided to CDFW.

## VI. NO OBJECTION TO FILING JOINT STATUS REPORT

The Center, PCFFA and IFR do not have direct knowledge of all of the actions outlined above, but have read this report and do not object to it being filed as a Joint Status Report.

**The Center's Position**

Eight entangled humpback whales have been reported so far in 2025 in California in commercial Dungeness crab gear or unknown fishing gear.[1] These entanglements are only those observed, which underestimates the true number of entangled whales.

NMFS has developed a method to estimate more closely the true number of humpbacks that entangled in commercial fishing gear on the West Coast.[2] NMFS calculated a "detection rate" of entangled whales based on the number of entangled whales seen repeatedly compared to entangled whales seen only once. For the five-year period 2020-2024 preliminary results indicate that the detection rate was 0.190, or just less than 20 percent. In other words, five times as many entanglements are occurring than are observed. That means that the eight humpback whale entanglements observed and reported so far in 2025 in commercial California Dungeness crab gear or unknown fishing gear yield an estimate of about 40 humpback whales entangled.

Reports from the spring 2025 testing of pop-up gear have been positive. The manufacturer's publicly provided data shows that 12 vessels completed over 120 fishing trips with 98% gear reliability, meaning that it was deployed and retrieved successfully. In comparison, fishers using conventional single-trap gear can lose between 5 and 10 percent of the gear. In the trial, fishers landed more than 217,000 pounds of crab using pop-up devices with an estimated value of $14 million.

**PCFFA/IFR's Position**

PCFFA/IFR agrees that the California Department of Fish and Wildlife (CDFW) has continued substantial progress toward its Settlement Agreement obligations as outlined in this

---

[1] CDFW, RAMP Entanglement History, https://nrm.dfg.ca.gov/FileHandler.ashx?DocumentID=218549&inline.

[2] Moore, J. and J. Greenman, *Integrating multiple information types to improve estimates of large whale entanglement mortality and serious injury*, NOAA Fisheries Presentation at the Marine Mammal Commission Meeting (Sept. 2025), https://www.mmc.gov/wp-content/uploads/3_Moore-humpback-entanglement-estimation-for-MMC-Sept-2025.pdf

7

Fourteenth Post-Stay Joint Status Report (3:17-cv-05685-MMC)

post-stay Joint Status Report. CDFW recently concluded an update of the Risk Assessment and Mitigation Program (RAMP) regulations which will be in effect for the 2026 California Dungeness Crab season.[3] PCFFA/IFR supported these changes in the new RAMP regulations, which include:

- Revised entanglement accounting
- Phased in implementation of line marking.
- Phased out attribution of unknown gear entanglements to the California Commercial Crab fishery
- Set season opening and closing dates when entanglements exceed in-season triggers
- Clarified Fishing Zone definitions
- Clarified fleet bi-weekly reporting requirements
- Conditional authorization for Alternative Gear for use after April 1, if the season closes early for risk.

However, PCFFA/IFR question the need for continuing judicial oversight of this case. The parties settled this case over six years ago with interim measures designed to avoid a closure of the Dungeness crab fishery in 2019. Much has changed since that time. The State has adopted a comprehensive regulatory framework through the RAMP that was recently updated and directly addresses whale entanglement risk. These binding regulations now govern the fishery and achieve the objectives that the settlement was intended to secure. Many interest groups participated in that rulemaking process. As a result, continued operation of the Settlement Agreement for purposes of an Incidental Take Permit (ITP) may no longer be necessary. While CDFW has submitted its application for an ITP, the timeframe for review and approval remains unclear. The Settlement Agreement was never intended to establish long-term judicial oversight of this fishery, which appears to be the outcome for the foreseeable future if the Settlement Agreement remains in effect pending resolution of the ITP application.

Rather than help clarify the process, the existing Settlement Agreement unnecessarily

---

[3] https://nrm.dfg.ca.gov/FileHandler.ashx?DocumentID=232900&line

8

impedes further progress towards management solutions. Further management changes are needed, particularly with respect to the Triggers for Management Action. The current triggers are based on interim and arbitrary language from the 2019 Settlement Agreement, and are not based on scientific or technical analysis[4] as required under California law.[5] Thus, the effect of the Settlement Agreement and lingering stay in this case—now six years running, with 14 status reports—has been to perpetuate the use of triggers that are themselves unlawful. CDFW can and should reconsider appropriate management triggers going forward without any constraints imposed by settlement terms from 2019 that served as "interim" measures that are divorced from the current scientific and environmental reality of both the fishery and species status.

      The California Commercial Dungeness Crab Fleet continues to endure and comply with extensive management actions which have imposed substantial economic costs on small family businesses and California port communities, all in a good faith effort to mitigate the risk of marine mammal entanglements. While fishermen are doing their part, we must still insist that these sacrifices be based on sound science and genuinely directed at protecting endangered whales, rather than merely fulfilling procedural requirements or Settlement Agreement conditions that are without meaningful and proven conservation impacts.

---

[4] *See* Dkt. No. 71 at 3, lines 3-7.
[5] *See* Cal. Fish. & Game Code § 7056(g).

| | | |
|---|---|---|
| 1 | Dated: November 17, 2025 | Respectfully submitted, |
| 2 | | /s/ *Michael S. Dorsi* |
| | | Michael S. Dorsi |
| 3 | | Deputy Attorney General |
| | | OFFICE OF THE ATTORNEY GENERAL |
| 4 | | |
| | | *Attorney for* |
| 5 | | *Defendant Charlton H. Bonham* |

Dated: November 17, 2025                                     Respectfully submitted,

/s/ *Michael S. Dorsi*
Michael S. Dorsi
Deputy Attorney General
OFFICE OF THE ATTORNEY GENERAL

*Attorney for*
*Defendant Charlton H. Bonham*

/s/ *Catherine Kilduff*
Catherine Kilduff
Kristen Monsell

*Attorneys for Plaintiff*
*Center for Biological Diversity*

/s/ *Robert Smith*
Robert Smith

/s/ *J. Timothy Hobbs*
J. Timothy Hobbs

*Attorneys for Intervenors Pacific Coast*
*Federation of Fishermen's Association and*
*Institute for Fisheries Resources*

**ATTESTATION**

I, Michael S. Dorsi, am the ECF user whose identification and password are being used to file this Joint Status Report. In compliance with L.R. 5-1(i), I attest that the other signatories have concurred in this filing. /s/ *Michael S. Dorsi (Nov. 17, 2025)*

**CERTIFICATE OF SERVICE**

Case Name: *Center for Biological Diversity v. Charlton H. Bonham*  Case No. **3:17-cv-05685-MMC**

I hereby certify that on _____, I electronically filed the following document with the Clerk of the Court by using the CM/ECF system:

**FOURTEENTH POST-STAY JOINT STATUS REPORT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on _____, at San Francisco, California.

_____  _____
Declarant                                                    Signature